IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**

SEP 10 2013

CLIFFORD J. PROUD
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | ) |
| | ) |
| A SAMSUNG GALAXY S III, VERIZON 4G LTE, CELLULAR TELPHONE, MODEL NUMBER #SCH-1535, FCC ID: A3LSCH1535. | ) ) ) ) ) |
| A SEAGATE EXTERNAL HARD DRIVE, BEARING SERIAL NUMBER 3NF04RD0. | ) ) ) |
| A DURACELL 2 GB THUMB DRIVE, BEARING NO SERIAL NUMBER. | ) ) ) |
| A DURACELL 8 GB THUMB DRIVE, BEARING NO SERIAL NUMBER. | ) ) ) |
| A FUJIFILM 8 GB SD CARD, BEARING SERIAL NUMBER 2620001918. | ) ) ) |
| A FUJUIFILM 8 GB SD CARD, BEARING SERIAL NUMBER 4183821670. | ) ) ) |
| A SANDISK 16 GB MICRO SD CARD, BEARING SERIAL NUMBER 1100906033DUT. | ) ) ) ) |

CASE NUMBER 13-M-6035-CJP

### APPLICATION AND AFFIDAVIT
### FOR SEARCH WARRANT

I, David J. Wargo, being duly sworn depose and say:

I am a Special Federal Officer with the United States Secret Service's Southern Illinois Cyber-Crime Unit, and have reason to believe that located within the following media devices known as:

A Samsung Galaxy S III, Verizon 4G LTE cellular telephone, model #SCH-1535, FCC ID: A3LSCH1535; a Seagate External Hard Drive, bearing serial number 3NF04RD0; a Duracell 2 GB thumb drive, bearing no serial

-1-

**number; a Duracell 8 GB thumb drive, bearing no serial number; a Fujifilm 8 GB SD Card, bearing serial number 2620001918; a Fujifilm 8 GB SD Card, bearing serial number 4183821670; and a SanDisk 16 GB SD Card, bearing serial number 1100906033DUT.**

which are items in the possession of the United States Secret Service Office, St. Clair County, Illinois, which is within the Southern District of Illinois, there is now concealed certain electronic data, including:

### SEE ATTACHED LIST ENTITLED "ATTACHMENT A"

which constitutes evidence of the commission of a criminal offense or which is contraband, the fruits of crime, or things otherwise criminally possessed, or which is designed or intended for use or which is or has been used as the means of committing an offense; all in violation of Title 18, United States Code, Sections 2251, 2252 and 2252A, specifically evidence related to the production, possession, distribution and/or receipt of images of minor engaged in sexually explicit activity and other sections of the United States criminal statutes. The facts to support the issuance of a search warrant are as follows:

### AFFIDAVIT

1. I am a Special Agent of the Illinois State Police, and have been so employed for over 13 years. I am also a Special Federal Officer deputized by the United States Marshal's Service to conduct investigations involving the victimization of children. My current assignment is forensic examiner/investigator with the United States Secret Service – Southern Illinois Cyber-crime Unit. My training includes 192 hours of training sponsored by the United States Secret Service on digital evidence and computer forensics examinations. I have over 300 hours of training recognized and certified by the Illinois Training and Standards Board and have been

trained in the investigation of computer use in the exploitation of children as well as other digital investigations and evidence gathering. I am a member of the Illinois Attorney General's Internet Crimes Against Children Task Force. I have assisted Federal, State, and local agencies in digital investigations. I have, on several occasions, been involved with investigations involving internet/computer crimes and have been involved in the execution of numerous search warrants.

2.  I make this affidavit in support of a warrant to search **A Samsung Galaxy S III, Verizon 4G LTE cellular telephone, model #SCH-1535, FCC ID: A3LSCH1535; a Seagate External Hard Drive, bearing serial number 3NF04RD0; a Duracell 2 GB thumb drive, bearing no serial number; a Duracell 8 GB thumb drive, bearing no serial number; a Fujifilm 8 GB SD Card, bearing serial number 2620001918; a Fujifilm 8 GB SD Card, bearing serial number 4183821670; and a SanDisk 16 GB SD Card, bearing serial number 1100906033DUT (hereinafter "SUBJECT MEDIA")**; taken from the residence of Kyle W. Oberg, 327 Sunset Drive, Smithton, St. Clair County, Illinois; Kyle W. Oberg's person at the time of his arrest; and from an individual associated with Kyle Oberg, all of which are now located within the Southern District of Illinois.

3.  This affidavit seeks to search for and to seize contraband, evidence or instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, specifically evidence related to the production, possession, distribution and/or receipt of images of minors engaged in sexually explicit activity.

4.  The statements contained in this affidavit are based upon my training and experience as a Special Federal Officer of the United States Secret Service, officers with the Smithton, Illinois, police department as well as other law enforcement officers and investigators,

and upon my consultation with personnel trained in the investigation, seizure, and analysis of computers, electronic data, and electronic media. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A exists on the **SUBJECT MEDIA**.

### Computer Searches Generally

5.  It is my belief that the items sought in this affidavit for search warrant are stored electronically. Based upon my knowledge, training, and experience, I know that electronic files can be easily moved from one computer or electronic storage medium to another. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, I know that searching computerized information for evidence of crimes often requires officers to seize most or all of a computer system's central processing unit ("CPU") and/or laptop computer, input/output peripheral devices, related software, documentation, storage media, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

    a.  Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert and examiner is qualified to analyze the system and its data. In any event, data search protocols are exacting

scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

b. The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the pertinent files, in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

c. In some instances, the computer "writes" to storage media without the specific knowledge or permission of the user. Generally, data or files that have been received via the Internet are automatically downloaded into a temporary internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer

usage. Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

      d.     Digital data on the hard drive that is not currently associated with any file, may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs store configuration date on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.

      e.     Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of items sought by this application. Additionally, since computer drives may store

artifacts from the installation of software that are no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timeliness of usage, confirming the identification of certain users, establishing a point of reference for usage, and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

### Child Pornography Collector Characteristics

6. Based upon my knowledge, training, and experience, I am aware that child pornography distributors/collectors:

a. Receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

b. Collect sexually explicit or suggestive materials (hard-core and soft-core pornography, whether of adults and/or of children) in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification.

c. Almost always possess and maintain their material (pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica, etc.) in the privacy and security of their homes or some other secure location. Child pornography distributors/collectors typically retain pictures, films, photographs, negatives,

magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years, and store their child pornography amongst other, otherwise legal, media or files.

d. Often correspond and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

e. Often maintain their collection of child pornography in computer files located on a computer's hard drive or other computer media and that these computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache". The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the

ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

### Background of Investigation

7. On July 17, 2013, the Smithton, Illinois, Police Department received a call from an individual with the Department of Children and Family Services in Galesburg, Illinois, asking him requesting a review a of case involving a minor child, identified as A.O., that the DCFS worker had recently interviewed after receiving a complaint from C.A., A.O.'s mother. During the interview, A.O. stated that Oberg, her father, took pictures of her "front bottom" while she was in the bathtub with his digital camera and then put them on his computer when she stayed at his home in Smithton, Illinois, within the Southern District of Illinois. Oberg shares joint custody of A.O., his daughter, with C.A..

8. C.A. called the Smithton Police Department on July 18, 2013, to file a formal complaint against her ex-husband Kyle Oberg. She stated that when A.O. was taking pictures of their dog, she asked A.O. why she liked taking so many pictures. A.O. told her that it was because "daddy (Oberg) likes to take pictures of me and my private areas" while at his house in Smithton, Illinois, within the Southern District of Illinois. C.A. said that she then immediately contacted the Child Advocacy Center who conducted an interview of A.O.

9. On July 18, 2013, a state search warrant was executed at Oberg's residence for any electronic media that might contain digital evidence related to the allegations made by A.O. Various digital media was seized from Oberg's home by the Smithton Police Department. At this time, I became involved in the investigation through the United States Attorney's Office because of my experience with computer forensics. On July 19, 2013, I went to the Smithton Police Department and retrieved various digital media, including, but not limited to, an ASUS desktop computer, bearing no serial number, that contained a Seagate 500GB hard drive, bearing serial number 5QG1MVMS, which I believed at that time would be related to the production, possession, distribution and/or receipt of child pornography. I then began a forensic review of these items.

10. During my examination of the Seagate 500GB hard drive, bearing serial number 5QG1MVMS, I located a folder titled "Dau." The folder contained three hundred and thirty seven (337) images that, based on my training and experience, are visual depictions of minors engaged in sexually explicit behavior. Some images were taken in a bathtub, which was tan or cream colored and had "Dora the Explorer" stickers on the bottom of the tub. Other images were taken on a bed which had a brown/grey/maroon striped comforter. A few images were taken on a brown leather/vinyl couch. In addition, three (3) of the images appear to have been taken outdoors in front of a blue/grey tent, and portray A.O. standing with her legs spread and urinating. Finally, I found three (3) videos that are close-ups of the minor child's vaginal area and anus in the same folder. In one of the videos, a finger is inserted in the child's vagina. Some of these images were taken with a Samsung cellular telephone while others were taken with a Canon EOS Rebel T2i digital camera.

11. I subsequently viewed photographs of A.O. that were provided by C.A. I was able to confirm that the minor child portrayed in all of the images and videos were of A.O. Moreover, a

voice is heard in the background of the videos. After hearing Oberg speak in person and on other videos located on the digital media I have examined thus far, I recognize the voice in the pornographic videos as his voice.

12. On August 19, 2013, I obtained a federal search warrant for the defendant's residence in order to search the residence for any items that may have been reflected in the images of A.O., and to seize these items. During the search of the residence, I seized a brown and gold striped comforter, tan bed sheets, a grey/blue Coleman tent, a Dora the Explorer bath mat, and a little Mermaid plastic toy. All of these items were shown in various pornographic images of A.O. It also appeared from the condition of the house, including a pile of unopened mail and the length of the grass, that Oberg had not been home in at least several days.

13. On August 21, 2013, an indictment was returned charging the defendant with production and possession of child pornography. The next day, Oberg was arrested pursuant to the federal arrest warrant at a friend's residence in Fenton, Missouri. The friend identified himself to the arresting officers as V.W. At the time of his arrest, his cellular telephone, a Samsung Galaxy S III, Verizon 4G LTE, model number SCH-1535, and FCC ID: A3LSCH1535 (listed in the **SUBJECT MEDIA**), was recovered from the residence at his direction. We subsequently seized the cellular telephone. I believe, based on my training and experience and the initial findings of the forensic examination of the Seagate 500 GB Hard Drive, that this might be the cellular telephone used to take pornographic images of A.O., especially since the model number of the cellular telephone seized at the time of his arrest matched the model number of one of the cameras used in producing the visual depictions of minors engaged in sexually explicit behavior.

14. On August 23, Investigator Aaron Keeney with the Smithton Police Department met

with V.W. who turned over a Seagate External Hard Drive, bearing serial number 3NF04RD0 (listed in the **SUBJECT MEDIA**), to him. V.W. told Investigator Keeney that, when he went to check on Oberg's residence at Oberg's direction, he found the external hard drive powered on in the residence. V.W. subsequently turned over the external hard drive to Investigator Keeney who then turned over the external hard drive to USSS Special Agent Williams on September 10, 2013.

15. Agent Williams was also contacted by V.W. who disclosed that there were SD cards and thumb drives at his residence that belonged to the defendant. Agent Williams picked up these items from V.W. on August 29, 2013. These items were a Duracell 2 GB thumb drive, bearing no serial number; a Duracell 8 GB thumb drive, bearing no serial number; a Fujifilm 8 GB SD Card, bearing serial number 2620001918; a Fujifilm 8 GB SD Card, bearing serial number 4183821670; and a SanDisk 16 GB SD Card, bearing serial number 1100906033DUT (listed in the **SUBJECT MEDIA**). I know, based on my training and experience, that SD cards are used for storage in digital cameras. At least one digital camera was used to produce the pornographic images of A.O. Moreover, thumb drives are digital media storage that can easily transfer data from one media device to another.

16. Based on my training and experience, I know that producers and/or collectors of child pornography collect images of minors engaged in sexually explicit on a variety of media, and that they almost always possess their material in a secure location to which they have access. In addition, based on my training and experience, I know that people who produce child pornography also possess a collection of child pornography, typically stored on digital media, such as SD cards, thumb drives, and external hard drives. I therefore believe that Oberg has evidence of either the production or possession of visual depictions of minors engaged in sexually explicit behavior,

specifically that of A.O., on the **SUBJECT MEDIA.**

17. Based on the above information, your affiant believes there is probable cause to believe that the attached listed items, which are property constituting evidence of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, or property designed or intended for use or which is or has been used as the means of committing those criminal offenses which makes it a federal crime for any person to knowingly produce, possess, distribute or receive child pornography in interstate commerce by computer, will be found on the **SUBJECT MEDIA.**

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
David J. Wargo, Special Federal Officer
United States Secret Service

STEPHEN R. WIGGINTON
United States Attorney

*Angela Scott*
ANGELA SCOTT
Assistant United States Attorney

State of Illinois      )
                       ) SS
County of St. Clair    )

Sworn to before me, and subscribed in my presence on the 10th day of September, 2013, at East St. Louis, Illinois.

_____
CLIFFORD J. PROUD
United States Magistrate Judge

## ATTACHMENT A
## ITEMS TO BE SEIZED

1. All data files, including but not limited to, graphic representations containing matter pertaining to child pornography, that is, visual depictions of children under the age of 18 years engaged in sexually explicit conduct.

2. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG) containing matter pertaining to child pornography.

3. Electronic mail, chat logs, and electronic messages, offering to transmit through interstate or foreign commerce, including by United State mail or by computer, visual depictions of minors engaged in sexually explicit conduct.

4. Data files pertaining to the use of peer to peer file sharing software.

5. Data files indicating dominion, use and control of the storage device which contains them.